# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN AUDIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| BRIAR PLACE, LTD., an Illinois | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Kathleen Audia ("Plaintiff"), by her attorneys, Jennifer M. Sender and Andrés J. Gallegos, Esq. of Robbins, Salomon & Patt, Ltd., for her complaint against Defendant Briar Place, Ltd. ("Defendant"), an Illinois Corporation, states as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over Counts I, II and III of this action pursuant to 28 U.S.C. § 1331 as the Plaintiff's claims alleged herein arise under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*; the Rehabilitation Act (the "Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. 18116. This Court has supplemental jurisdiction over Counts IV and V of this action pursuant to 28 U.S.C. § 1367.  Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Defendant resides in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## THE PARTIES

3.     Plaintiff is a 63-year old female who is profoundly deaf. Plaintiff has a very limited ability to verbalize speech and read lips. Plaintiff's primary means of communication is through American Sign Language ("ASL"). Plaintiff is a person with a disability within the meaning of all applicable statutes. Plaintiff resides in a supportive living facility in Aurora, Illinois.

4.     Defendant is an Illinois corporation, and a skilled nursing and intermediate care facility, that owns and operates a nursing and rehabilitation facility, Briar Place Nursing and Rehabilitation (the "Facility"), in Indian Head Park, Cook County, Illinois. The Facility offers and advertises its comprehensive spectrum of rehabilitative, clinical and psychiatric services.

## DEFENDANT'S CONDUCT

5.     "Effective communication" is critical in virtually all medical contexts. Without it, a caregiver cannot obtain complete medical histories; assess symptoms; provide for patient rights, including informed consent; develop accurate diagnoses and prognoses; develop, explain and administer procedures, medication and treatment generally; provide counseling; or otherwise ensure that residents' needs are appropriately met.  Failure to ensure that deaf and hard of hearing patients can effectively communicate threatens the quality of care and, even when treatment ultimately is successful, violates legally protected rights. In enacting the ADA, Congress found that individuals with disabilities continually encounter discrimination in critical areas such as health services, including, *inter alia*, outright intentional exclusion, communication barriers, and the failure to make modifications to existing practices.  42 U.S.C. § 12101(a)(3), (a)(5).

2

6.      Defendant has failed to provide Plaintiff, a person with a disability, the same quality of care as other residents and deprived her of the opportunity to participate in her care and rehabilitation on the basis of her disability. This unequal treatment occurred because, among other things, Defendant relied upon the exchange of written notes or required Plaintiff to lip read during numerous complex and sufficiently lengthy conversations, even though Plaintiff required and requested the availability of an ASL interpreter. In a nursing and rehabilitation facility, examples of circumstances when the communication may be sufficiently lengthy or complex so as to require an ASL interpreter include (collectively, "Vital Encounters"):

A.      When conducting a comprehensive assessment of a resident's needs, strengths, goals, life history and preferences;

B.      Developing and implementing the resident's patient-centered plan of care, including establishing expect goals and outcomes of care;

C.      Informing the resident of his or her rights to participate in his or her plan of care, rights and responsibilities;

D.      Discussing a resident's symptoms and medical condition, medications, and medical history;

E.      When conducting periodic assessments of a resident;

F.      Providing a diagnosis and recommendation for treatment;

G.      Communicating with a resident during treatment, including physical and occupational therapies, testing procedures, and during physician's rounds;

H.      Obtaining informed consent for treatment and therapies;

I.      Providing instructions for medications, post-treatment activities and follow-up, treatments;

J.      Providing mental health services, including group or individual counseling for residents and family members;

K.      Discussing powers of attorney, living wills and/or complex billing and insurance matters;

L. During educational presentations;

M. Discussing discharge planning and discharge instructions; and

N. When providing religious services and spiritual counseling.

7. Defendant acted intentionally and with deliberate indifference when it failed to provide the benefit of its services, programs, and activities to Plaintiff and failed to provide appropriate auxiliary aids and services to Plaintiff to effectively communicate with her during nearly all Vital Encounters.

8. Defendant acted intentionally and with deliberate indifference when it failed to provide appropriate auxiliary aids and services to Plaintiff to allow for effective communication between her and its doctors, nurses, counselors, social workers, therapists, and others (collectively, the "Facility's Personnel").

9. Defendant has denied Plaintiff full and equal access to its services and denied Plaintiff the equal opportunity to participate in her own healthcare and rehabilitation in violation of the ADA, the Rehabilitation Act and Section 1557 by:

A. Failing to provide adequate and effective means of communication with the Facility's Personnel;

B. Failing to adequately train the Facility's staff on the differences in methods of communication for simple and short conversations versus for Vital Encounters;

C. Failing to provide her equal access to its programs and services; and

D. Failing to establish comprehensive policies and procedures to meet its legal mandates to achieve effective communications.

## PLAINTIFF'S EXPERIENCE

10.      Plaintiff is profoundly deaf. She used hearing aids since the age of 3 and lost total hearing at the age of 55. Plaintiff relies on ASL as her primary means to communicate. She has a very limited capacity to lip read. Plaintiff can verbalize some words with slight slur. Absent a sign language interpreter, she cannot communicate fluently or engage in substantive conversation with someone who does not know sign language. When she uses lip reading or exchanging written notes to communicate, she is only able to comprehend a small percentage of the conversations. Plaintiff suffers from Type 2 diabetes and is insulin dependent.

11.      Plaintiff became a resident of the Facility on March 17, 2015, and remained at the Facility for 866 days, until July 31, 2017.  She was transferred to the Facility from Wheaton Care Center in Wheaton, Illinois, where she was recovering for four days after being discharged from Advocate Good Samaritan Hospital where she was treated for a laceration to her head from a fall. Upon being admitted to the Facility, she was diagnosed as having a major depressive disorder, single episode (primary admission); balance and gait issues (requiring the use of a walker), osteoarthritis, low back pain, and other conditions.

12.      At the time of her admission Brandie Weininger, a friend of Plaintiff, acted as Plaintiff's attorney-in-fact under a general power of attorney.

13.      Throughout Plaintiff's 866 day stay at Defendant's Facility, Plaintiff was required to lip read or exchange written notes with the Facility's Personnel during numerous Vital Encounters, including, *inter alia,* the following:

A.    During initial physical, nursing, social services, recreation, dietary assessments upon admission;

B.    During the development of its legally required patient-centered plan of care with its interdisciplinary team;

C.    During approximately 298 one-on-one periodic social services, nursing, dietary and recreation assessments;

D.    During approximately 28 one-on-one nursing and restorative nursing evaluations;

E.    During approximately 38 one-on-one nursing evaluations discussing Plaintiff's medical condition and symptoms; and explaining results of tests;

F.    When participating in approximately 11 nursing and social services counseling and educational presentations;

G.    During approximately 38 one-on-one physician and nurse practitioner evaluations providing diagnosis and/or recommendations for treatment;

H.    During approximately 21 one-on-one mental health evaluations and services with a physician and/or social worker; and

I.    During approximately 8 of 11 discharge planning conferences with social services personnel.

14.    Throughout the 866 days that she stayed at the Facility, Plaintiff was consistently denied the ability to independently walk outside of the Facility because she repeatedly failed the Defendant's evaluation process as she could not understand questions asked of her. When conducting those evaluations no ASL interpreter was provided, despite repeated requests by the Plaintiff, and Defendant required Plaintiff to lip read or exchange written notes. As a result, Plaintiff only left the Facility during those 866 days for medical appointments.

15.    Because Defendant denied Plaintiff effective communication with the Facility's Personnel, Plaintiff's discharge from the Facility was unnecessarily, significantly delayed. Denial of effective communication resulted in Plaintiff's inability

to understand her rights to request to be discharged, her rehabilitation goals, corrective actions required to meet those goals, and the demonstrated behaviors required to satisfy the Defendant's discharge criteria.

16.     Defendant's failure to provide appropriate auxiliary aids or services to enable its Facility's Personnel to effectively communicate with Plaintiff created significant emotional problems for Plaintiff. Plaintiff experienced frustration, fear, and emotional distress due to her extremely limited ability to communicate with the Facility's Personnel about her health and well-being, rehabilitation and lack of understanding of the reasons for her prolonged stay at the Facility.

**COUNT I**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,**
**42 U.S.C. § 12131**

17.     Plaintiff incorporates herein by reference paragraphs 1 to 16 above.

18.     At all times relevant herein, there was in full force and effect a statute known as the ADA, 42 U.S.C. §§12101 – 12189, and its implementing regulations, 28 C.F.R. §§36.101 – 36.608, providing in pertinent part as follows:

A.     No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. §12182(a); 28 C.F.R. §36.201;

B.     It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. §12182(b) (1)(A)(i); 28 C.F.R. § 36.202(a);

C.     It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. §12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b);

D.     It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. §12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a);

E.     It shall be discriminatory to fail to take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden. 42 U.S.C. §12182(b)(2)(A)(iii); 28 C.F.R. §36.303(a).

19.     The Facility is a "place of public accommodations" within the meaning of the ADA. 42 U.S.C. §12181(7)(F); 28 C.F.R. §36.104.

20.     Defendant's acts and omissions alleged herein violated the ADA and its implementing regulations in one or more or all of the following manners:

A.     Defendant discriminated against Plaintiff by denying her the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at its Facility.

B.     Defendant discriminated against Plaintiff by denying her the opportunity to participate in or benefit from the goods, services, privileges, advantages, or accommodations of its Facility.

C.     Defendant discriminated against Plaintiff by offering or affording her services that are not equal to those services afforded to other individuals without hearing impairments.

D.    Defendant discriminated against Plaintiff by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its goods, services and facilities to Plaintiff where such modifications would not fundamentally alter the nature of their goods, services or facilities.

E.    Defendant discriminated against Plaintiff by deliberately and intentionally failing to provide appropriate auxiliary aids and services such as sign language interpreters, or other means to effectively communicate with Plaintiff, where the taking of such steps would not fundamentally alter the nature of the offered services or would not result in an undue burden.

21.    Defendant was required to take such steps as may be necessary to ensure that Plaintiff was not excluded, denied services or otherwise treated differently than other residents because of the absence of auxiliary aids and services, such as sign language interpreters or other means to effectively communicate, where the taking of such steps would not fundamentally alter the nature of the offered services or would not result in an undue burden.

22.    Defendant's failure to provide ASL interpreters, whether on-site or through video remote interpreting ("VRI"), to communicate with deaf residents excluded or denied vital services to Plaintiff, caused her to be treated differently, and as a result deprived Plaintiff the full and equal enjoyment of Defendant's health care and rehabilitation services, daily interactions and residential programs.

23.    Despite Plaintiff's complaints and protests, the Facility knowingly and intentionally continued to discriminate against Plaintiff by failing to ensure that appropriate auxiliary aids and services were provided to achieve effective communication.

24.    Defendant's conduct constituted violations of the ADA.

25.     Plaintiff are entitled to reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 12205.

WHEREFORE, Plaintiff prays for the following relief against Defendant:

A.     A declaration that Defendant operated in a manner which discriminated against Plaintiff because of her disability;

B.     An award of reasonable attorneys' fees and costs; and,

C.     Such other relief as the Court deems just.

### COUNT II
### VIOLATION OF THE REHABILITATION ACT
### 29 U.S.C. § 704

26.     Plaintiff incorporates by reference paragraphs 1 to 16 above.

27.     Plaintiff bring this action under Section 504 of the Rehabilitation Act, 29 U.S.C. §794. Plaintiff was intentionally and deliberately denied full and equal enjoyment of Defendant's healthcare and rehabilitation services through Defendant's failure to comply with the Rehabilitation Act.

28.     Defendant receives federal financial assistance in the form of reimbursement from federal Medicare and Medicaid programs and is therefore subject to the antidiscrimination provisions of the Rehabilitation Act, as described herein.

29.     At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act, 29 U.S.C. §701 *et seq.*, and its implementing regulations, 45 C.F.R. § 84.4(a), which provides in pertinent part as follows:

A.     "No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.S.C.§794(a);

B.    An individual with a disability is "otherwise qualified" to participate in covered programs and activities if that individual "meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(l)(4);

C.    "Program or activity" means all of the operations of an entire corporation if assistance is extended to such corporation as a whole or the corporation is principally engaged in the business of providing health care services and any part of the corporation receives federal financial assistance. 29 U.S.C. §794(b)(3)(A)(i) and (ii); 45 C.F.R. §84.3(k)(3)(i)(A) and (ii);

D.    "Federal financial assistance" means "any grant, loan, contract…or any other arrangement by which the Department [of Health and Human Services] provides or otherwise makes available assistance in the form of… [f]unds." 45 C.F.R. §84.3(h);

E.    "No qualified handicapped person shall, because a recipient's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity to which this part applies." 45 C.F.R. §84.21; and

F.    "In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap: (1) Deny a qualified handicapped person these benefits or services… (3) Provide a qualified handicapped person with benefits or services that are not as effective as the benefits or services provided to others… (4) Provide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons." 45 C.F.R. § 84.52(a).

30.    The Defendant's intentional and deliberate acts and omissions alleged herein violated the Rehabilitation Act and its implementing regulations in one or more of the following respects:

A.    Defendant discriminated against Plaintiff by denying her the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at its Facility;

B.    Defendant discriminated against Plaintiff by denying her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of its Facility;

C.      Defendant discriminated against Plaintiff by offering or affording her services that are not equal to those services afforded to other individuals without hearing impairments;

D.      Defendant discriminated against Plaintiff by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its goods, services and facilities to Plaintiff where such modifications would not fundamentally alter the nature of the goods, services or facilities; and

E.      Defendant discriminated against Plaintiff by deliberately and intentionally failing to provide appropriate auxiliary aids and services, such as sign language interpreters, or other means to effectively communicate with Plaintiff, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in an undue burden, despite knowing the failure to do so would likely result in harm to the Plaintiff's federally protected right and failed to act upon that likelihood.

31.    Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. §794(a)(2), states that the "remedies, procedures and that the rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. §2000(d) *et seq.*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

32.    Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. §794(a), as Defendant's conduct has inflicted injury and damages upon Plaintiff, including loss of a civil right, mental anguish, humiliation and mental pain and suffering.

WHEREFORE, Plaintiff prays for the following relief against Defendant:

A.      A declaration that Defendant operated in a manner which discriminated against Plaintiff who required auxiliary aids and services such as sign language interpreters, on-site or through VRI, or other effective means to communicate;

   B.  An award of compensatory monetary damages;

   C.  An award of reasonable attorneys' fees and costs; and,

   D.  Such other relief as the Court deems just.

**COUNT III**
**<u>Violation of Section 1557 of the Patient Protection and Affordable Care Act,</u>**
**<u>42 U.S.C. § 18116</u>**

33.  Plaintiff incorporates by reference paragraphs 1 to 16.

34.  Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

35.  As Defendant participates in Medicare and Medicaid, it is a covered entity subject to compliance with Section 1557.

36.  The implementing regulations of Section 1557, prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

   A.  Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

13

(1)     that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

(2)     that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

(3)     how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

(4)     the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

(5)     the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

(6)     how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

B.     That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the ADA. Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified

14

individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added).

37.    As of July 18, 2016 -- 378 out of the 866 days that Plaintiff was confined at Defendant's Facility -- Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide her with an ASL interpreter, either on-site or via VRI.

38.    Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff were as effective as communications with others in its healthcare and rehabilitation programs and activities, and Defendant failed to give any consideration, primary or otherwise, to Plaintiff's communication preferences, as Defendant was legally required to do under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

39.    Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

40.    Defendant's conduct constituted violations of Section 1557.

41.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

42.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

WHEREFORE, Plaintiff prays for the following relief:

A.     A declaration that Defendant operated in a manner which discriminates against the Plaintiff, and that Defendant failed to provide communication access to the Plaintiff as required by law;

B.     An award of compensatory monetary damages;

C.     An award of attorneys' fees and costs; and

D.     Such other relief as the Court deems just.

## COUNT IV
## NEGLIGENCE

43.     Plaintiff incorporates by reference paragraphs 1 to 16 above.

44.     From the time the Facility admitted Plaintiff as a resident on March 17, 2015, Defendant knew the Plaintiff was deaf and would require auxiliary aids and services to communicate effectively, particularly during Vital Encounters.

45.     Defendant had a duty to provide skilled nursing care and rehabilitation services to the Plaintiff in a manner to avoid mental anguish or emotional distress.

46. The Illinois Nursing Home Care Act, 210 ILCS 45/1-101 *et seq.*, establishes a standard of care that required Defendant to provide its services and permit Plaintiff to participate in its services in a language that Plaintiff understands.

47. Defendant breached its duty of care to Plaintiff, either carelessly or intentionally, in one or more of the following ways:

A. Denied Plaintiff the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its Facility;

B. Denied Plaintiff the opportunity to participate in her care, care planning process, her rehabilitation given the absence of auxiliary aids and services to permit Plaintiff to communicate effectively;

C. Knowingly failed to implement adequate practices or procedures necessary to afford Plaintiff an equal opportunity to participate in its goods, services and facilities to Plaintiff; and

D. Failed to provide appropriate auxiliary aids, sign language interpreters, or other means to effectively communicate with deaf residents, resulting in a negligent or willful withholding of adequate care and resulting in mental anguish to Plaintiff, 210 ILCS 45/1-117;

48. Despite knowledge of the Plaintiff's hearing disability, Defendant knowingly and intentionally failed and refused to ensure that appropriate auxiliary aids or services were provided to Plaintiff to achieve effective communication.

49. The harm suffered by Plaintiff was a direct and proximate result of the Defendant's failure to meet their duties of care owed to Plaintiff, and the standard of care applicable to nursing homes under the Nursing Home Act, the ADA, the Rehabilitation Act, Section 1557 among other standards of care.

WHEREFORE, Plaintiff prays for the following relief against Defendant:

A. An award of compensatory monetary damages;

B.      An award of reasonable attorneys' fees and costs; and,

C.      Such other relief as the Court deems just.


### COUNT V
### VIOLATION OF THE ILLINOIS NURSING HOME CARE ACT & SKILLED NURSING AND INTERMEDIATE CARE FACILITIES CODE
### 210 ILCS 45/1-101, *ET SEQ*; 77 IL. ADMIN CODE 300.110 *ET SEQ.*

50.     Plaintiff incorporate by reference paragraphs 1 to 16 above.

51.     Plaintiff brings this action under the Illinois Nursing Home Care Act (the "Act"), 210 ILCS 45/1-101, *et seq*., and its implementing regulations, Ill. Admin Code tit. 77, pt. 300, which existed at all relevant times herein.

52.     Plaintiff's private right of action against Defendant, a skilled nursing and intermediate care facility, licensed in the state of Illinois, arises under 77 Ill. Admin. Code, Section 300.3290(a).

53.     Section 300.3290(d) of Title 77 permits court actions under the Act for both injunctive and declaratory relief. Section 3-603 of the Act.

54.     Section 300.3290(e) of Title 77 allows recovery of damages against the nursing home facility, "in addition to and cumulative with any other legal remedies available to a resident" without exhaustion of administrative remedies. Section 3-604 of the Act.

55.     Section 300.3290(c) provides that the licensee shall pay three times the actual damages or $500, whichever is greater, and costs and attorneys' fees to a facility resident whose rights as specified in Part 1 of Article II of the Act are violated. Section 3-602 of the Act.

56.     Defendant violated the Act, and its duty to Plaintiff in several respects, among other actions, including but not limited to those duties specified under the Act as follows:

A.      Failed to develop or implement a Comprehensive Resident Care Plan to adequately communicate with the "active participation" of the Plaintiff concerning her needs, as required by Section 3-202a;

B.      Failed to provide a care plan that would attain or maintain the highest practicable level of independent functioning, as required by Section 3-202a-b;

C.      Failed to provide the necessary care to prevent diminution of the resident's abilities in activities of daily living, including hygiene, nutrition, rooming, ambulation and functional communication systems, as required by Section 3-202b(4)-(5), 3-202d(3)-(4).

57.     As a result of Defendant's acts and or omissions, Plaintiff suffered the following damages:

A.      Mental anguish and emotional distress due to the Plaintiff's inability to communicate with the Facility's Personnel and the unnecessary prolonged stay at the Facility;

B.      Lack of adequate medical care, lack of informed consent and lack of participation in her healthcare and rehabilitation causing additional stress, frustration and adding to her depression; and

C.      Plaintiff's loss of association, inability to participate in social services, activities and programs at the Facility;

58.     The harm suffered by Plaintiff was a direct and proximate result of the Defendant's failure to meet its duties of care owed to Plaintiff under the standard of care required of skilled nursing and intermediate care facilities under the Act and the Illinois Administrative Code, in addition to other applicable standards of care.

WHEREFORE, Plaintiff prays for the following relief against Defendant:

A.      An award of compensatory monetary damages;

19

B.     An award of reasonable attorneys' fees and costs; and,

C.     Such other relief as the Court deems just.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Dated: September __, 2017              KATHLEEN AUDIA, Plaintiff.

/s/ Jennifer M. Sender

One of Her Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiff
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com

14E2505