# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KATHLEEN AUDIA, <br><br> Plaintiff, <br><br> v. <br><br> BRIAR PLACE, LTD., <br><br> Defendant. | No. 17 CV 6618 <br><br> Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kathleen Audia was a resident at a nursing and rehabilitation facility owned and operated by defendant Briar Place, Ltd. Audia is profoundly deaf. During her stay at the Briar Place facility, Audia had to communicate with staff by reading lips and exchanging written notes, despite her requests for an American Sign Language interpreter. Audia claims that Briar Place breached its duties to her and discriminated against her by failing to provide effective methods of communication. Audia brings claims based on the Rehabilitation Act, the Patient Protection and Affordable Care Act, negligence, and the Illinois Nursing Home Care Act. Briar Place moves to dismiss portions of the amended complaint based on the failure to state a claim. For the following reasons, the motion is granted in part, denied in part.

## I.  Legal Standards

A complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I must accept as true all of the

facts alleged in the complaint and draw reasonable inferences from those facts in plaintiff's favor, but I am not required to accept as true the complaint's legal conclusions. *Id*. at 678–79.

**II. Facts**

Kathleen Audia is a 63-year-old woman who is profoundly deaf. [15] ¶ 3.[1] Audia's hearing has been impaired since childhood, and she lost total hearing at the age of 55. [15] ¶ 10. Audia primarily communicates through American Sign Language, with very limited ability to verbalize speech and read lips. [15] ¶¶ 3, 10. When she uses lip reading and written notes to communicate, she is only able to understand a small part of the conversation. [15] ¶ 10.

In March 2015, Audia fell and received a laceration to her head. [15] ¶ 11. After being discharged from the hospital and spending a few days at another facility, Audia became a resident of Briar Place's nursing and rehabilitation facility. [15] ¶ 11. Upon arrival, Audia was diagnosed with a number of ailments, including major depressive disorder, balance and gait issues, osteoarthritis, and low back pain. [15] ¶ 11.

Throughout her time at the Briar Place facility, Audia was required to use lip reading or written notes to communicate with the staff, even though she repeatedly requested an ASL interpreter. [15] ¶¶ 6, 13, 14. Audia was limited to reading lips and exchanging written notes at a number of her sessions with staff, including,

---

[1] Bracketed numbers refer to docket numbers on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. The facts are taken from the amended complaint, [15].

2

among others, initial admission assessments; development of her care plan; nursing, social service, dietary, and recreation assessments; nursing evaluations of her medical condition; physician and nurse practitioner evaluations; mental health evaluations; and discharge planning conferences. [15] ¶¶ 6, 13. Audia was also not allowed to walk outside alone because she repeatedly failed Briar Place's evaluations since she did not understand what she was being asked. [15] ¶ 14.

Because Audia was not able to effectively communicate with Briar Place's staff, her discharge was delayed. [15] ¶ 15. She did not understand her right to request a discharge or what she needed to do to satisfy Briar Place's discharge criteria. [15] ¶ 15. The lack of effective communication caused Audia frustration, fear, and emotional distress. [15] ¶ 16. Audia was finally discharged on July 31, 2017, 866 days after she was admitted. [15] ¶ 11.

### III. Analysis

#### A. Count I: Rehabilitation Act

The Rehabilitation Act prohibits, among other things, discrimination against a "qualified individual with a disability" solely on the basis of her disability in a program receiving federal financial assistance. 29 U.S.C. § 794(a). To state a claim under the Act, Audia must allege that "(1) [she] is a qualified person (2) with a disability and (3) [Briar Place] denied [her] access to a program or activity because of [her] disability." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). "Refusing to make reasonable accommodations is tantamount to denying access." *Id*. Audia must also allege that Briar Place received federal financial assistance.

3

*Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). And in order to receive compensatory damages under the Act, Audia must sufficiently plead that the discrimination was intentional. *See Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015).

Audia argues that by not providing her with an ASL interpreter (or other appropriate aid), Briar Place intentionally deprived Audia of her ability to effectively communicate with the Briar Place staff and, as a result, prevented her from enjoying the benefits offered to others who did not have her disability. Briar Place does not contest that it receives federal financial assistance or that Audia is a qualified person with a disability. Instead, its primary argument is that Audia has not sufficiently pleaded that any alleged discrimination was intentional. Although the Seventh Circuit has not yet clarified whether intentional discrimination in this context requires a showing of discriminatory animus or deliberate indifference, *Strominger v. Brock*, 592 F.App'x 508, 511 (7th Cir. 2014), the majority approach is to apply the deliberate indifference standard. *See Everett v. Baldwin*, No. 13 C 04697, 2016 WL 8711476, at *10 (N.D. Ill. Jan. 15, 2016). Deliberate indifference "does not require personal animosity or ill will but rather may be inferred when there is knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* (citation omitted). Both Audia and Briar Place apply the deliberate indifference standard, so I will too.

Briar Place raises the facts in *Everett* in an effort to distinguish the case here. Briar Place summarizes: "The *Everett* plaintiff . . . alleged repeated requests for

reassignment in compliance with his permits … and his multiple formal grievances. These complaints should have alerted the correctional center defendants of the need to accommodate his medical condition, and the failure to do so suggests deliberate indifference to Everett's medical needs." [20] at 4; *Everett*, 2016 WL 8711476, at *10. Briar Place also tries to distinguish itself from another case, in which "the plaintiff, who had Parkinson's disease and could not write, alleged deliberate indifference when defendants refused to enforce a court order for access to the library and typewriter." [20] at 4; *Hildreth v. Cook Cty.*, No. 08 C 3506, 2010 WL 1656810, at *3 (N.D. Ill. Apr. 23, 2010). Briar Place uses *Everett* and *Hildreth* to show that Audia's complaint does not allege that Briar Place "violated any court order or failed to honor a medical prescription." [20] at 4. But that misses the point. The *Everett* and *Hildreth* defendants were told what the plaintiffs needed but did not provide what was requested, giving rise to a reasonable inference of deliberate indifference. That is what Audia has pleaded. She alleges that she repeatedly asked Briar Place for an ASL interpreter, but Briar Place did not give her one. *See* [15] ¶¶ 6, 14. Requests that go unanswered can support a finding of deliberate indifference. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015); *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015) (finding deliberate indifference to be adequately pleaded where the plaintiff alleged that "the hospital, with knowledge of her [neurological] disability, purposely denied her access to the computer that helps her communicate").

Briar Place also argues that Audia has not alleged that it denied her benefits solely because of her disability. But the inference that the denial of hearing accommodations is solely because of Audia's hearing disability is a reasonable one. *See Carter v. Baldwin*, No. 17 CV 3690, 2018 WL 656086, at *3 (N.D. Ill. Feb. 1, 2018) (denying a motion to dismiss where a hearing-impaired plaintiff argued that "the absence of a sign language interpreter diminished the quality of his medical care and, therefore, the facility discriminated against him based on his disability").

Briar Place's motion to dismiss Count I is denied.

### B. Count II: Affordable Care Act

Audia also brings claims under § 1557 of the Affordable Care Act, which, similar to the Rehabilitation Act, prohibits discrimination on the basis of disability. Briar Place argues that the ACA does not provide a private right of action. No court of appeals has addressed whether § 1557 includes a private right of action, but several district courts have found that it does. *See Briscoe v. Health Care Serv. Corp.*, 281 F.Supp.3d 725, 737 (N.D. Ill. 2017); *Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, No. CV 17-4803, 2017 WL 4791185, at *5 (E.D. La. Oct. 24, 2017); *Se. Pennsylvania Transp. Auth. v. Gilead Scis., Inc.*, 102 F.Supp.3d 688, 698 (E.D. Pa. 2015); *Callum v. CVS Health Corp.*, 137 F.Supp.3d 817, 848 (D.S.C. 2015); *Rumble v. Fairview Health Servs.*, No. 14-CV-2037 SRN/FLN, 2015 WL 1197415, at *7 n.3 (D. Minn. Mar. 16, 2015). I agree. Section 1557's incorporation of "[t]he enforcement mechanisms" of other statutes is congressional recognition that the act can be

enforced through the kind of private right of action authorized by the referenced statutes.

Briar Place argues that by cross-referencing the four other civil rights statutes, Congress meant to direct plaintiffs to enforce their rights through those other statutes, not § 1557. But such cross-references are a way to create a private right of action in a statute. For example, the Rehabilitation Act cross-references Title VI. *See* 29 U.S.C. § 794a(2) ("The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available" for violations of § 504.). The Supreme Court has not interpreted the cross-reference to mean that plaintiffs do not have a private right of action to bring § 504 claims and must instead sue through Title VI, but rather has understood the cross-reference to mean that "the remedies for violations of . . . § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964." *Barnes v. Gorman*, 536 U.S. 181, 185 (2002). The same reasoning applies here to § 1557.[2]

Briar Place's motion to dismiss Count II is denied.

C. **Count III: Negligence**

Briar Place argues that Audia's negligence claim sounds in "healing arts" malpractice negligence, and therefore Audia was required to attach a physician's

---

[2] Briar Place also emphasizes "the Supreme Court's hostility . . . to implying [private rights of action] in spending statutes." *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 911 (7th Cir. 2003). But, as it acknowledges, there is no "broad rule that spending power statutes can never be enforced by private actions" and instead "courts must examine each statutory scheme closely." *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 378 (7th Cir. 2010). Examining § 1557 closely, I conclude that Congress intended to create a private right of action.

7

certification to the complaint. Because she did not submit a physician's certification, Briar Place argues that the claim must be dismissed.

Illinois law requires complaints that seek damages for "injuries or death by reason of medical, hospital, or other healing art malpractice" attach an affidavit stating that the plaintiff consulted with a health professional who believes there is "a reasonable and meritorious cause for filing" the action and the written report of that health professional. 735 ILCS 5/2-622(a).[3] Failure to do so is grounds for dismissal. 735 ILCS 5/2-622(g). This rule is a substantive one that applies in federal court. *See Hahn v. Walsh*, 762 F.3d 617, 628–33 (7th Cir. 2014). In determining whether a complaint alleges healing arts malpractice or ordinary negligence, Illinois courts often consider three factors: "(1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror; (2) whether the activity is inherently one of medical judgment; and (3) the type of evidence that will be necessary to establish plaintiff['s] case." *Jackson v. Chicago Classic Janitorial & Cleaning Serv., Inc.*, 355 Ill.App.3d 906, 909 (2005).

Audia bases her negligence claim in part on Briar Place's "duty to provide skilled nursing care and rehabilitation services to [Audia] in a manner to avoid mental anguish or emotional distress." [15] ¶ 36.[4] The average juror does not know

---

[3] A plaintiff can also file an affidavit saying that she cannot get a consultation before the statute of limitations runs, allowing her some extra time before filing the certificate and written report. 735 ILCS 5/2-622(a). Either way, an affidavit needs to accompany the complaint.

[4] Audia also refers to a standard of care imposed by the Nursing Home Care Act. [15] ¶ 37. Although Audia does not make the argument, I will note that § 5/2-622's requirements do not apply to claims brought under the Act, *see Eads v. Heritage Enterprises, Inc.*, 204 Ill.2d 92, 109 (2003), and the Act does allow for negligence claims. 210 ILCS 45/3-601. But Audia

8

what kind of care and services qualify as "skilled nursing care and rehabilitation services" and would require expert testimony. And determining whether an ASL interpreter or other auxiliary aid was needed to properly treat Audia is a question of medical judgment. Audia claims that Briar Place knew of her hearing disability but did not provide her with sufficient means of communication in what she labels "Vital Encounters," which includes (among others) development of Audia's plan of care; discussion of Audia's medical history, medications, and symptoms; physical and occupational therapy sessions; physician's rounds; and mental health counseling. [15] ¶¶ 6, 13, 35. So Briar Place's medical professionals had to exercise their medical judgment with respect to at least two questions—(1) what methods of communication were appropriate given the nature of Audia's hearing disability and (2) what level of communication was necessary for the medical service being administered. For jurors to determine whether Briar Place's decisions were sound or not, they require expert testimony.

Audia argues that her negligence claim is one about policy, not medical care, which will require non-medical evidence of what Briar Place's policies were, whether those policies provided effective communication for deaf residents, and whether Briar Place complied with their policies. [22] at 11. She points out that "[i]f . . . the standard may be established on the basis of defendant's administrative policies or other evidence short of medical expert testimony, plaintiff will be permitted to proceed with his suit on a theory of ordinary negligence." *Kolanowski*

does not argue that her negligence claim is based on the Act (she brings a separate count under that statute), so I will assume that Count III is based on common law negligence.

9

*v. Illinois Valley Cmty. Hosp.*, 188 Ill.App.3d 821, 824 (1989). But Audia's negligence claim is not primarily based on Briar Place's administrative policies, and she cannot amend the complaint through her briefing. Audia's negligence claim is also based on Briar Place's denial of services, denial of the opportunity to participate in Audia's own care, and the failure to provide effective communication to deaf residents, which resulted in "withholding of adequate care" and mental anguish. [15] ¶ 38. Such a claim cannot be resolved without medical expert testimony. So Audia's negligence claim is one for healing arts malpractice, and Illinois law required her to attach a physician's certification to the complaint. Because she did not, the claim is dismissed.

Briar Place's motion to dismiss Count III is granted. Count III is dismissed without prejudice.[5]

### D. Count IV: Illinois Nursing Home Care Act

Briar Place does not argue for dismissal of Audia's entire Nursing Home Care Act claim, but it asserts that Audia has not pleaded sufficient facts to support her request for punitive damages. As Briar Place concedes, "plaintiffs who sue for violation of the Nursing Home Care Act may 'recover common law punitive damages upon proof of willful and wanton misconduct on the part of defendant.'" *Vincent v. Alden-Park Strathmoor, Inc.*, 241 Ill.2d 495, 502 (2011) (citation omitted). Willful

---

[5] "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2–622 before her action is dismissed with prejudice.'" *Sherrod v. Lingle*, 223 F.3d 605, 614 (7th Cir. 2000) (citation omitted).

10

and wanton conduct is defined as "a course of action which shows actual or deliberate intent to harm or which, if the course of action is not intentional, shows an utter indifference to or conscious disregard for a person's own safety or the safety or property of others." *Karas v. Strevell*, 227 Ill.2d 440, 455 (2008) (citation omitted). "[T]he standard for assessing whether conduct is willful and wanton is 'remarkably similar' to the deliberate indifference standard." *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001) (citation omitted). I have already found that Audia has pleaded facts that plausibly establish deliberate indifference. Given the similarity between the standards of deliberate indifference and willful and wanton conduct, Audia has also sufficiently pleaded facts to support her request for punitive damages at this stage.[6]

Briar Place's motion to dismiss Count IV is denied.

### E. Statute of Limitations

Briar Place argues that parts of Audia's claims are untimely. Audia filed her complaint on September 13, 2017, so, Briar Place argues, the claims subject to two-year statutes of limitations (the Rehabilitation Act, negligence, and Illinois Nursing Home Care Act claims) can only be based on conduct occurring after September 13, 2015. Audia alleges that she became a resident on March 17, 2015. So essentially, Briar Place asks for dismissal of Counts I, III, and IV as they relate to conduct from March to September 2015.

---

[6] The state-law requirement that plaintiffs seek leave from the court before pleading punitive damages, 735 ILCS 5/2-604.1, is procedural and does not apply here. *See MCI Worldcom Network Servs., Inc. v. Big John's Sewer Contractors, Inc.*, No. 03 C 4991, 2003 WL 22532804, at *3 (N.D. Ill. Nov. 7, 2003) (collecting cites).

Briar Place raises this statute of limitations argument for the first time in its reply brief and it is therefore waived. *See Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 636 (7th Cir. 2018). It is also generally inappropriate to dismiss a claim as time-barred on a Rule 12(b)(6) motion. *See Walker v. Thompson*, 288 F.3d 1005, 1009–10 (7th Cir. 2002). Anyway, it asks me to parse each of Audia's claims in a way that I will not do at this stage. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.").

## IV. Conclusion

Briar Place's motion to dismiss, [16], is granted in part, denied in part. Count III is dismissed without prejudice.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: April 24, 2018